David Hodges. Mr. Hodges is a prisoner in the Minnesota Correctional System and in 2018 he was brutally attacked by in his cell by another inmate using a weapon. Mr. Hodges fended him off but was very much afraid of further retaliation. He fended him off, both of them suffered physical injuries, but he fended him off and then he had his family members report the incident to prison officials out of fear of retaliation and he himself reported the incident out of fear of retaliation, explained that it was gang related and that he was convinced that the person was going to look for retaliation again and put both him in danger and also raised the risk that Mr. Hodges would cause serious harm to this other inmate and Mr. Hodges was disciplined. There was a disciplinary investigation that took place and he was disciplined for the incident, placed in segregation, but his request to remain separate from this inmate was not granted. The inmate was released and the other inmates were named in this case. After he was done with his segregation term, they just put him back in the same unit that this other inmate was housed in and within an hour or two, this inmate along with another, with a friend, again attacked Mr. Hodges, this time with a chemical mixture in his face that caused severe... I think we're familiar with the facts. Do you want to go right to why you think there's deliberate indifference or whatever you're... Sure. I can do that. The deliberate indifference is the failure to separate Mr. Hodges from this other inmate when there was an obvious danger that Mr. Hodges persistently notified the officials about and the failure to provide any evidence that his concerns were taken into account. All we have is documentation that it was referred to some committee that decides incompatibility and the committee denied an incompatibility, but no competent evidence documenting that this was, that there was any consideration or any kind of rational basis for the denial of any request for Mr. Hodges to be protected from this other inmate. Mr. Kushner, what would that look like if there were records that a court could review as to the investigation? You're suggesting an absence gives you sort of the deliberate indifference because we don't know. Can you flesh that out for me a little bit more? At what point would an investigation... Because I don't think that you're contesting that there was one, but at what point would an investigation be deliberate indifference? Well, as I said, there was a disciplinary investigation. It wasn't a meaningful investigation for purposes of determining what needed to be done for Mr. Hodges' safety. And so I'm not suggesting that the... And I guess one point in support to clear up is the issue isn't whether there was an obligation to create documentation, but whether or not the DLC and its officials have produced enough evidence to overcome an inference that there was deliberate indifference. And that's what they haven't done. So we don't, since there isn't any meaningful documentation or even meaningful recollection of the discussions that occurred, there's no basis for any conclusion other than that the officials were indifferent to Mr. Hodges' safety. There's no dispute that he was violently assaulted, there were injuries that resulted, and that Mr. Hodges expressed fear and wanted to be kept away from this inmate. There's no dispute that all the defendants were aware of that situation, they knew about this danger to Mr. Hodges, and that they didn't do anything better. Suppose they had gone slightly further and said, we looked at all of that and we had to make a tough judgment call because we get fights all the time in prison, and we administratively, as a management matter, have decided we can't move people to different facilities every time there's a fight. So we have to measure the likelihood of another altercation against the costs of reallocating the prisoners. And it's a judgment call, and in this case, we just didn't think the showing was strong enough to warrant the move. What if they had said something along those lines? Would that still be deliberate indifference? Well, that's, I guess we'd have to evaluate the specific facts that were set forth on that. Yeah. And, you know, there was some hint at that, but no reason that that's the case. And I would contend that costs are not a justification for failing to protect the safety of an inmate. There's a constitutional obligation on the part of prison officials under Farmer v. Brennan, a very well-established precedent, to protect inmates' safety who are in their custody and are dependent on the mercy of the prison officials to protect their safety. And so that obligation is there, and costs aren't an excuse. And I know the warden... No, costs wouldn't be enough, but what if they just said, you know, we have to make a judgment in each case as to how likely, how great the risk is? Maybe they didn't think it was great enough. And if there was meaningful evidence that they really did consider the risk and determined there wasn't enough of a risk, you know, it's possible that could overcome the deliberate indifference standard, but we don't have that. We have everyone who's involved in the decision except for one person had no explanation as to why they didn't take any action. It was either someone else's responsibility, or they just didn't remember whether they were involved in the discussions or what happened in the meeting. We have one prison official who looked at it and came up with his rationale after the fact. This is Gene Olson, who had no specific recollection of what happened in this meeting. You know, who was there, who said what, what he said, but he surmised that this was probably the reason, you know, that there's a lot of fights in the institution, and so we can't just move everyone. Didn't they testify, even if they couldn't remember, this particular meeting about the general process? They have this committee, and the committee analyzes the risks and so forth? Sure. That's what the process is supposed to be, and no one had a, there was no documentation of what happened in that process here, or that it actually happened, and there was only one person who claimed any kind of a vague recollection of the process, but again, it wasn't specific. So he surmised about, well, this is probably what we discussed it with, you know, being clear that he wasn't sure and didn't have a specific recollection of what happened. So this isn't, and so what it comes down to here is this is, of course, you know, we're not asking the court to find in favor of one party or the other. We're just asking for Mr. Hodges to have his, to have court in court, which he's entitled to, to have a jury decide, and so based on the evidence that was presented by the Department of Corrections and its officials, there's ample grounds for someone to look at this, to look at the record or the lack of a record and the lack of the ability to provide specific explanations for the decisions that were made and conclude that the Department of Corrections here was, did meet the standard of deliberate indifference, that the individual defendants were in fact, did in fact disregard Mr. Hodges' undisputed serious safety concerns. And, you know, it's a, there's also a problem that the district court took this vague testimony from one official, which wasn't, well, it wasn't enough to excuse him, but then also apply it to all the other people involved who had no recollection of anything that happened and no document, also no documentation that they provided anything in response to Mrs., Mr. Hodges' concerns. And so this is, I think that the evidence here is, you know, is very powerful here, especially looking at the precedent, Young v. Silk and Nelson v. Shuffman, where there's, you know, which rely on the Farmer v. President, Farmer v. Brennan precedent, that, you know, this isn't, we don't have to prove what was actually in the Department of Corrections officials' mind, we have to, there's room for, this is about circumstantial evidence here, and given the lack of any kind of specifics that are available to justify their decision, that the circumstantial evidence supports an inference for the required element that they were, that the officials did in fact deliberately disregard Mr. Hodges' safety, and it's an issue that the jury needs to decide. They can weigh, you know, the explanations that the court is, that Judge Colleton has put forward, you know, the defendant can present that to a jury, the jury should be able to decide whether that's adequate, it was not an appropriate case for summary judgment. And if there are no questions right now, I'll reserve the rest of my time for rebuttal. Very well. You may. Thank you for your argument. Mr. Timmerman, we'll hear from you. Good afternoon, Your Honors. I'm Jeff Timmerman for the Appellees. May it please the Court. I want to start today by talking about the distortion of the evidentiary standard that Mr. Hodges' lawyer has said again here in court today. There's no presumption of deliberate indifference. In his briefing, he suggests that my clients have to exonerate themselves and that they have to affirmatively disprove that there was deliberate indifference here. That's not the standard, of course. The standard is the plaintiff has to present evidence of deliberate indifference. As I understand the argument, and I suppose Mr. Kushner can correct me if I'm wrong, but I think it's focusing on this lack of information about the very process that would have allowed your client to explain why this decision was made. And so when you combine that vacuum with the factual scenario here that really doesn't seem to be in too much dispute, that that in combination is the inference of deliberate indifference. At least that's how I see it. Yes, Your Honor. I think that is Mr. Hodges' position here. A couple things on that point. The lack of recollection, we know from Ms. Burke's testimony that the facility conducted an average of six to seven of these incompatibility assessments each week. So between the time that Mr. Hodges was attacked on September 18th and when Ms. Burke's Lieutenant Olson and Special Investor Gunderson were deposed, that's about six to seven hundred of these incompatibility reviews. They occur per the testimony every time that there's an altercation at the facility. So I think the lack of crystal clear recollection on what exactly was discussed as to Mr. Hodges misses the point, Your Honor. We do know from the testimony what the process is for incompatibility review meetings. They consider things like incident reports, and we know that the incident report in this instance was considered by the Incompatibility Committee. In fact, the Lieutenant Olson testified that he presented that report to the committee and they discussed it. We also know that Ms. Burke had spoken with Mr. Hodges' girlfriend prior to the incident, and Ms. Burke had spoken with Mr. Hodges' girlfriend prior to the Incompatibility Committee meeting and was aware of her concerns. They also considered the history of incidents between inmates, which is one of the factors that the committee looks at, and Lieutenant Olson testified that they did consider that here. This was a first-time incident between these two inmates, and that was one of the factors that militated against deciding whether the incompatibility existed here. And they also looked at the severity of the altercation and whether one or both parties believe that the dispute is over, which is another one of the factors that this committee specifically looks at. Can I ask about that particular factor? It wasn't clear to me from the timeline of the record when the officer or the investigator talked to the other inmate, Mr. Osgood. Is that in the record? Because it seems to me that it was before the Incompatibility Committee made its decision, or after, or do we have an exact date on that interview? The record, unfortunately, Your Honor, is not exactly clear on that point. We know that Lieutenant Olson and Sergeant Coons attempted to interview Mr. Osgood on September 25th, the day before the Incompatibility Team met. However, it's not clear when Mr. Osgood relayed that, from his perspective, this issue was over. So, at least on summary judgment, the piece of information that one of the two thought it was all over, really can't be taken as true, correct? Well, it does speak at least to Lieutenant Olson's mindset after the Incompatibility Committee met, because part of the allegations here is that at least three of the appellees, Assistant Commissioner Gow, Warden Titus, and Case Manager Worker Stacey Olson, should have done something after this Incompatibility Meeting occurred. So, I think from the perspective of Lieutenant Olson and Sergeant Coons, this is further evidence that this issue appeared to be over between these two inmates, at least according to the aggressor and the initial altercation. Do they ever say, no, it's not over, I plan to go back and attack the guy? No, Your Honor. There's nothing in the record. Well, what's the point of that factor, then? Well, I'm sure inmates say things are over all the time, and they're not really over, but there's more evidence in this record that Mr. Osgood had expressed to Mr. Hodges that he intended to revisit this altercation or to continue it. And Mr. Hodges did not report that, and none of his family members or his girlfriend did either. They simply essentially reiterated the same concerns over and over about his safety. To that end, the information that was presented to the three appellees who weren't on this Incompatibility Committee was the same information that had already been presented to others, including the Incompatibility Committee, and it was information that the committee had considered in reaching its decision here. So are you saying that there's nothing in the record about phone calls regarding additional threats? Correct, Your Honor. Yeah, correct. The information that Mr. Hodges' family members relayed to DOC staff at various levels of the organization was the same information that his fiancée had reported initially on September 18th, excuse me, September 24th, and that Mr. Hodges himself had also relayed to Lieutenant Olson and Sergeant Coons on the 25th. So he obviously was concerned for his safety, concerned that there could be another altercation, and that's what his family members also told the DOC staff with whom they interacted here. What does it take to, does the record show when the committee has chosen to move people and what considerations lead to a move? Judge Kalten it does. In fact, the second incident here resulted in finding of an incompatibility in the transfer. So there's no, this is a discretionary standard. This committee involves people from different disciplines throughout the facility who bring to bear on the process their expertise. So there's no hard or fast rule as to what constitutes an incompatibility and what doesn't here. If you look at the Selk case, I mean, that was a case involving an inmate who had already been attacked twice and corrections officials who did nothing and blew him off. I mean, one of the officials said, we'll go file a kite, and Selk said, if I file a kite, that's going to be too late, and the duty sergeant completely disregarded Selk's concerns altogether. So this is not a case where the DOC totally disregarded an inmate's concerns. This is a case where the DOC considered the concerns, including the concerns raised by family members, and ultimately made a decision that was wrong, but case files were very clear, including Farmer v. Brennan, which opposing counsel has cited that wrong decisions are unconstitutional. So essentially, Your Honors, at its core here, what we have are facts that are rebuttable speculation, and the net yield of that, as the district court properly concluded, are unrebutted facts. So the district court did not err in declining to accept Mr. Hodges' speculation regarding this committee's operations, whether this meeting actually took place, or any other matter. Regarding deliberate indifference, Your Honors, again, the committee here unanimously determined that there was no incompatibility. Based on that decision, Mr. Hodges was unfortunately reintroduced into the same housing block as the individual with whom he had an altercation, and obviously it didn't turn out well, and that's not good. It's not an excuse, but it's not deliberate indifference. When you sort of summed it up as there was an incompatibility committee, it made a decision, maybe the wrong one, but it made one, it seems that you're putting a lot of the eggs in the basket of just the fact that there was an incompatibility committee. Is that your position, that because there was a committee, it had been established, this is how it generally works? Are you saying that's good enough to overcome a deliberate indifference claim? Your Honor, if it's a reasoned analysis, and if we have... If I can interrupt, you don't have any analysis, right, because you don't have any information on how this particular committee conducted its meeting. And so what I'm hearing you say is sort of just the process, the fact that it exists and it seemed to have done its job, that is enough to overcome any kind of inference of deliberate indifference. Well, we do have more than just that here, Your Honor. Again, we do have testimony from Lieutenant Olson that he presented his incident report to the committee. We have testimony from Ashley Burtz that she had spoken with Mr. Hodges' family members, was aware of the concerns, and that was talked about at the committee. We have testimony from Lieutenant Olson that this was a first-time incident, and that's one of the things that the committee considered here. So we do have some evidence here in the form of testimony of the deliberative process that took place. So you don't think the record would support an inference that they just went in there and said, Hodges is always complaining, let's just disregard his request? That's correct, Your Honor. Because of the facts you just mentioned that show it was actually a process that involved relevant considerations? That's correct, Your Honor. And to Judge Kelly's point, if this were an instance that, you know, this was, as Mr. Hodges has alleged, a sham meeting, and at that point, Judge Colleton, they simply dismissed Mr. Hodges' concerns out of hand, then, yes, then we might be looking at a deliberate indifference differently here. But it is our position that when you have a committee like this Incompatibility Committee, which meets every time there's an altercation, and this committee is charged with assessing offenders' safety first and foremost, that when the committee does its job right, as it did here, and reasonably concludes that based on the individual circumstances presented, that there's not a substantial risk of harm to an inmate, that that's not deliberate indifference, because that's a reasonable response. And I also think, Your Honors, with respect to deliberate indifference, not only is it a reasonable response, but, relatively, I think what happens when you have a reasonable response like this is that it negates the subjective element required to show deliberate indifference in cases like these. I don't have much time left, and I'd like to just spend what remaining time I do have talking about the three other appellees here, again, Assistant Commissioner Dow, Warden Titus, and Stacey Olson, who was a caseworker at the Rush City Prison. For two reasons, Your Honors, the District Court properly granted some re-judgment as to these particular defendants in the case. First, there's no evidence that any of these three individuals subjectively believe that Mr. Hodges risked further harm. Mr. Hodges relayed the same information to Ms. Olson that he and others had already conveyed to staff, including Ms. Olson's supervisor, Ashley Burks, who was on the Incompatibility Committee. Ms. Olson, it's in the record at Record Cite 108, she, you know, Mr. Hodges brought these concerns to her, reviewed the record and determined that the Incompatibility Committee had met and had determined there was no incompatibility. There's no evidence in the record that Ms. Olson, as a caseworker, had the authority to override the Incompatibility Committee either. With respect to Assistant Commissioner Dow, he had his staff contact the Rush City facility to ensure that Mr. Hodges' family members' concerns were appropriately addressed, and he trusted that Warden Titus would ensure the matter was handled appropriately. Warden Titus, Record Cite 204, verified with Ashley Burks that the Incompatibility Committee had reviewed the concerns and had done its job, and our position is that there's no evidence in the record showing that any of these defendants subjectively believed that the Incompatibility Team's response was not going to protect Mr. Hodges. Second, and relatedly, the District Court correctly concluded, as a matter of law, that it's reasonable for prison administrators and caseworkers, like Ms. Olson, to rely on the determination of their peers who have specialty knowledge necessary to assess risk like this. The Axelson case, which Judge Wright cited, is directly on point. The warden in that case was determined not to be liable for relying on a classification committee's decision. Indeed, this Court described the act of intervening to overrule a decision as an extraordinary step. For these reasons, Your Honors, the State Defendants respectfully request that Judge Wright's order be upheld in all regards. Thank you. Thank you. Thank you for your argument. Thank you. Yeah, what the evidence indisputably shows is that every appellee that's named had the knowledge to support that Mr. Hodges was in danger and needed to be protected. That's the circumstance that shows that they knew of the danger to Mr. Hodges, and the fact that they didn't do anything in response is the circumstantial evidence to support that they deliberately disregarded his needs. And it's the appellees that have failed to produce evidence to overcome what's a very reasonable conclusion in this, that very reasonable conclusion in this case, because there aren't no one's able to provide any specifics as to what they did at the time that they were presented with this information, other than that they heard the information, or in the case of Commissioner Gow, that he signed all the correspondence that advised them of the information, but did nothing in follow-up. So it's very easy after the fact to come up with a bunch of reasons why, well, maybe we didn't think that he was in danger. Maybe he was in danger in this case, but what the appellees are lacking is any evidence that at the time that they engaged any kind of meaningful consideration of Mr. Hodges' concerns. Well, what evidence do you have that it was a sham, if they have a regular process that considers several hundred of these? Because no one has any specific recollection of what happened at that meeting, if anything, and there's no documentation. So what the appellees are asking the court to do is to, you know, take a huge leap in terms of just, you know, I mean, these corrections departments already have the benefit of a lot of discretion and a lot of deference, but they're asking the court to take a huge leap now and just saying, merely by the fact that saying we had a process and so we must have considered this, that that's it, you know, end of story. And that's just not the case. How would a jury consider that, then, if you're, you know, you want a jury trial in this and have a jury decide upon, what would the jury base its decision, if you would be asking them to find deliberate indifference, what would they base that on? Well, they would hear our position that the fact that there isn't any kind of documentation or specific recollection that anyone has of trying to protect Mr. Hodges' concerns. And they would hear our position on safety that they were deliberately indifferent in the way that against the appellee's explanation that, well, we've got a whole bunch of cases, and you know what, the fact that they have a lot of violence in that institution cannot in any way excuse their failure to consider a specific instance of danger to this specific inmate. That's our argument, but the appellees will say, well. Well, I'm not asking the Court to impose any kind of rule of law in that effect, but I think the effect of a holding that they haven't produced evidence to overcome, you know, to conclusively overcome Mr. Hodges' case, I think the effect of that will be that they'll need to create a formal record of every one of these meetings. And they'll need to create better documentation to avoid liability in the future when there's serious assaults involving inmates. So I think the effect of a decision in our favor will definitely be, you know, encouraging better practices on the part of the Minnesota Department of Corrections, as well as probably other departments of corrections in this circuit and who review that decision. So I think that's an example of where it's important to have a holding that, you know, has a lot of evidence to support that decision. You know, holds these departments to meaningful standards to establish that they're protecting inmate safety in dangerous situations. Do you know whether that's a national standard for prisons to make written reports of these kinds of meetings throughout the country? Would that be consistent with national practice, or would this be an outlier? I don't, I think, you know, we didn't get into that, so I guess I don't know what the national practice is, but I know that there's always a lot of documentation out there. You know, when I deal with these corrections cases, and there wasn't really any documentation in this case, so, I mean, there's a... I just wondered if you could answer more broadly about incompatibility reviews at numerous facilities throughout, not just our circuit, but you don't really know nothing about that. But if I could just make one more point briefly, Judge, just, I think the Axelson v. Watson case, I think, is instructive, because that's a case where the, you know, where the inmate was able to have a jury trial, you know, in a similar situation where an, they called it the classification committee, failed to take action in terms of the inmate's concerns about danger, and so he had a jury trial, and the jury in that case found that there wasn't deliberate indifference, but the point was that he was entitled to a jury trial, and I don't think the case here is, this case is any less compelling. I think it's stronger, and, you know, in terms of the warden in that case, there was no evidence that the warden knew, had the details about what happened, but in this case, the warden had the details about what happened, so in that sense, it's stronger than the Axelson case as well. Thank you very much.